```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND


SECURITIES AND EXCHANGE          :
COMMISSION,                      :
           Plaintiff,            :
                                 :
      v.                         :      CA 10-433 S
                                 :
ONLINE-REGISTRIES, INC.,         :
and DAVID G. STERN,              :
           Defendants,           :
                                 :
      and                        :
                                 :
MICHELE RITTER,                  :
           Relief Defendant.     :
```

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

    This matter was referred to me for mediation to resolve differences regarding the wording of a proposed order which the parties were instructed by District Judge William E. Smith to submit.  The mediation was conducted on November 5, 2010, but the parties failed to reach agreement.  At the conclusion of the mediation, the Court informed the parties that it would write a report and recommendation as to how the differences over the wording of the order should be resolved.  This is that report and recommendation.

## Facts[1]

Plaintiff Securities and Exchange Commission (the "Commission") commenced this action against Defendants Online-Registries, Inc. d/b/a Online Medical Registries ("OMR"), and David G. Stern ("Stern") (collectively "Defendants") and Relief Defendant Michele Ritter ("Ritter") on October 19, 2010. The following day a temporary restraining order was entered against Defendants. See Temporary Restraining Order, Order Freezing Assets and Order for Other Equitable Relief (Docket ("Dkt.") #2) ("TRO"). Stern moved on October 25, 2010, to have the TRO dissolved. See Motion to Dissolve Temporary Restraining Order (Dkt. #3).

On October 26, 2010, Judge Smith conducted a courtroom conference with the parties. See Dkt. During the conference Judge Smith indicated that he "would order a carve-out from the asset freeze contained in paragraphs III and IV [of the TRO] to provide Mr. Stern with funds to meet his basic needs for approximately the next two months." Letter from Gametchu to Smith, J., of 10/29/10 ("Gametchu Letter") at 1; see also Letter

---

[1] The Court states only those facts which are relevant to the limited issue before it, i.e., the resolution of differences regarding the wording of an order which will replace the Temporary Restraining Order, Order Freezing Assets and Order for Other Equitable Relief (Docket ("Dkt.") #2).

from Stern to Smith, J., of 10/21/10[2] ("Stern Letter") at 1 ("[T]he Court, I thought, told the parties to agree on language that removed from the asset freeze sufficient sums to allow for the operation of the OMR, allow me to pay my bills and exclude altogether Neptune Press and Golf a la Carte.").

Two days later Stern sent an email to one of the Commission's attorneys, Ms. Kathleen Shields ("Attorney Shields"). See Gametchu Letter, Exhibit ("Ex.") A (Email from Stern to Shields of 10/28/10 at 12:25 p.m.). Stern's email began with the statement that it was an "attempt to comply with the Court's order regarding modifying the freeze (paragraphs III, IV)," id. at 1, and that he was "providing information required pursuant to paragraphs V 4 and 5, VI [of the TRO] ...," id. Stern also stated that "[i]n crafting a modified TRO, the Court indicated that neither Neptune Press nor Golf a la Carte should be subject to the freeze." Id. In the remainder of the email, Stern provided information about his and OMR's assets, both liquid and non-liquid, and their liabilities and monthly expenses. See id. at 1-2. Near the end of the email, Stern set forth his position regarding the "carve-out."

Consequently, so that the Court's desire to grant relief

---

[2] Although the letter from Stern to Judge Smith bears the date "October 21, 2010," Letter from Stern to Smith, J., of 10/21/10 at 1, Stern stated at the November 5th mediation that this was a typographical error and that the correct date of the letter is October 29, 2010. This seems likely as the letter was received on November 1, 2010.

3

> sufficient to let both me and OMR to continue to exist
> (and to remove my book endeavors from the freeze) I would
> urge that the freeze be lifted as to both Neptune Press
> and Golf a la Carte, that the freeze be lifted as to
> Newport [M]ini Storage, that it be lifted as to me in the
> amount of $21,500 through 12/31/10 including releasing my
> two personal accounts at BankNewport so that bills can be
> paid and as to OMR in the amount of $25,000 through
> 12/31/10 including releasing the OMR account so that
> bills can be paid.

Id. at 2.

Attorney Shields responded to Stern's email the same day, rejecting his proposal and opining that it was not made in good faith. See Gametchu Letter, Ex. B (Email from Shields to Stern of 10/28/10 at 4:49 p.m.) at 1. Her email stated in part:

> You are seeking to carve out $23,250 per month from the
> asset freeze for you and OMR, when: (1) your and OMR's
> total frozen liquid assets total $881.34, (2) you have
> represented that you have no other accounts at financial
> institutions, and (3) the only source of income you have
> identified is $1,500 per month in social security
> payments.
>
> .... The information that you have provided suggests
> that available assets are grossly inadequate to
> compensate investors, much less do so and carve out any
> sum for the ongoing operation of a business whose
> investments were obtained by fraud. Further, the
> assertion that you should be entitled to incur personal
> expenses of $21,000 before the end of the year, with no
> identified source of funds to pay for those expenses, and
> leaving only illiquid assets on which you place a value
> of less than $10,000 to compensate investors, is
> outrageous.

Id.

In the penultimate paragraph of her email, Attorney Shields stated that "the Commission intends to send a letter to Judge Smith tomorrow arguing that in light of the paucity of available

4

assets, no carve out from the freeze is appropriate because there are not even sufficient assets to ensure the availability of meaningful relief for investors." Id.  In the final paragraph Attorney Shields opined that the information Stern had provided in his email "does not comply with paragraph V.4 of the TRO in that it does not itemize those items of your property that you value at between $500 and $1500, and it does not itemize those items of OMR's property that are valued at over $500." Id.

Stern responded to this email an hour later and reiterated his understanding of what Judge Smith had indicated at the October 26th conference:

> First, the Court was clear that OMR should be able to continue its operation, lest all be lost.  Also, I thought the Court was equally clear that albeit small, Golf a la Carte and Neptune Press should be permitted to operate.  I am asking that I be able to pay personal bills which I have outlined and it may require that I seek other employment in conjunction with social security and help from friends to pay those bills.  In the end, I believe that the Court has stated that I should be able to live.

Gametchu Letter, Ex. C (Email from Stern to Shields of 10/28/10 at 5:49 p.m.).  Stern also indicated that even if no money from OMR was allocated to compensate him, the company still needed to pay its bills in order to remain operational. See id.  As support for this contention, Stern wrote: "It is precisely that I have little else other than my house and OMR as assets that I should be able to try and save both." Id.

Later in the same email, Stern opined that he did not

"believe that the Court intended me to list every chair or table or rug or even painting that may be worth between $500 and $1500." Id. He stated that he was requesting that the TRO be modified to require him to itemize only items worth in excess of $1500. See id. Stern also "asked ... that the asset freeze be li[f]ted as to those items at Newport Mini Storage ... [and] that [he] be permitted to remove those items to [his] house." Id. Stern noted that if he did not pay the storage fee "the items will be sold by the storage facility and all value ... extinguished." Id. Lastly, Stern stated that he was asking that the TRO be modified by shortening the time covered by discovery "to the period October 20, 2007[,] to date," id. at 2, which he asserted was the "the period of time permissible for recovery under the instant Complaint," id. at 1.

On October 29th, the Commission notified Judge Smith that based on "Stern's representations concerning the scope of his and OMR's assets," Gametchu Letter at 1, the Commission opposed any "carve-out" from the asset freeze, see id. at 2. The Commission cited Stern's October 28th email in which he indicated that his liquid assets totaled $881.34, his illiquid assets had an estimated value of less than $10,000,[3] and the only identified

---

[3] In a footnote, the Commission indicated that it had received information from other sources which caused it to question the veracity of this statement and noted that it would need to conduct a physical examination of the currently frozen cars, paintings, furniture, and rugs under Fed. R. Civ. P. 34 to determine their value. See Letter from Gametchu to Smith, J., of 10/29/10 ("Gametchu Letter")

6

source of future income was $1,500.00 is social security benefits. See id. at 1. In the Commission's view:

> Permitting Mr. Stern to dissipate the very limited funds and other assets that have been frozen in order to continue the operation of a business whose investments were likely obtained by fraud does not serve investors or the public interest. Further, allowing Mr. Stern to use defrauded investors' funds to become current on his past due personal bills, and pay other personal expenses that he likely shared with relief defendant Ritter before the asset freeze issued, is an improper balancing of the harms, and would not be equitable.

Id. at 2.

With respect to the appropriate period for discovery, the Commission stated that Stern "is simply wrong concerning the scope of the Complaint." Id. The letter continued:

> The Commission is seeking, among other things, the equitable remedy of disgorgement, which is not limited as to time, and because Mr. Stern has represented that he solicited and accepted investor funds beginning in 2000, full discovery should pertain to the period from 2000 to date, and the accounting should be provided from the approximate time of Mr. Stern's release from prison (March 31, 2005) to the present.

Id.

On October 29, 2010, Stern sent a letter to Judge Smith, enclosing copies of the emails cited above, and asking him to read this exchange. See Stern Letter at 1. Stern expressed the belief that the maximum amount of money which could be due to the two investors who had complained about Stern and/or OMR was "less than $60,000," id. at 1, and that even if all the investors with

---

at 1 n.1.

whom Stern had not spoken wanted their money back, "the total is less than $125,000," id. While acknowledging that these were still large sums "in as much as I do not have the cash to repurchase the stock now," Stern asserted that "OMR is viable and valuable and able to attract investors and to generate the revenue," id. He reiterated the irreparable harm he foresaw if no relief were granted from the TRO:

> [I]f OMR cannot have relief, it cannot pay its phone bill/DSL (which is already past due), its rent, lights, heat, the result is self evident—the Company is out of business. If I cannot pay my household bills, the result is self evident, the house is foreclosed upon. If OMR and I prevail without relief, the harm is irreparable. Even if the SEC prevails, if OMR is out of business and I lose my house, the ability to pay any judgment would be extinguished. And what about the other 85% (which I suggest is closer to 92%) of the holders of OMR stock?

Id. at 1-2.

As previously noted, the Court conducted an unsuccessful mediation session with the Commission and Stern on Friday, November 5th in an attempt to resolve the differences regarding modification of the TRO. Thereafter, the Court took the matter under advisement.

**Discussion**

The Court understands the Commission's interest in preventing the dissipation of OMR's and Stern's assets and also in preventing OMR and/or Stern from using funds allegedly obtained by fraud to pay either business or personal expenses. However, the Commission's complete opposition to allowing Stern

8

access to any funds, not even his $1,500 monthly social security benefit, diminishes the Commission's credibility. Its position that Stern should have, in effect, no income with which to provide himself with the bare necessities of life for approximately two months is unreasonable.

The social security benefit has no connection to any alleged fraudulent investment activity by Stern, and at this stage of the proceedings he should not be deprived of these funds. Similarly, it does not appear that Neptune Press and Golf a la Carte are connected to alleged fraudulent activity. In addition, the Commission has not disputed Stern's claim that Judge Smith indicated a willingness to lift the TRO with respect to these two entities. Also, the fact that Stern has indicated that he may be able to earn income through one or both of these entities (which income would result from book sales and not investment activity) also influences the Court in concluding that they should no longer be subject to the freeze imposed by the TRO.

Stern acknowledges that neither he nor OMR presently has assets and/or income sufficient to pay the expenses and liabilities which he identifies in his emails as pressing. However, he indicates that he may be able to obtain funds sufficient to pay these expenses through additional employment or borrowing from friends and seeks modification of the TRO to allow him to make such payments if he is able to obtain funds to do so

from what could fairly be described as new sources, meaning funds not presently in his possession or the possession of OMR. Allowing Stern to pay these expenses and liabilities with "new money" would avoid the concern expressed by the Commission that Stern would be using money allegedly obtained by fraud from investors, thereby dissipating such funds. Accordingly, the TRO should be modified to allow Stern and OMR to use "new money" to pay expenses.

Lastly, the Court agrees with Stern that it is in no one's interest to allow the items in the Newport Mini Storage to be sold because of non-payment of the storage bill. Accordingly, Stern should be permitted to pay these charges and to remove the items to his home. However, such removal should not occur until after November 29, 2010, to allow the Commission an opportunity to inspect the items in storage and determine their value.[4]

**Recommendations**

*Exclusions*

I recommend that the TRO be modified so that it excludes:

    1.   Stern's monthly social security benefit of approximately $1,500;

    2.   all assets and income of Neptune Press and Golf a

---

[4] At the November 5th mediation the Commission indicated that it may lack sufficient funds to carry out such an inspection during the month of November. Nevertheless, the Court declines to impose the cost of an additional month's storage on Stern simply because the Commission cannot conduct an inspection until next month.

la Carte;

   3.   up to $5,000 per month in money from "new sources," meaning money which was received by Stern after November 5, 2010;[5] and

   4.   the requirement that Stern identify items of personal property with a value of less that $1,000.

***Newport Mini Storage***

I further recommend that the TRO be modified so that it permits Stern to pay any balance due at Newport Mini Storage and to allow him to terminate the use of such storage after November 29, 2010, provided that prior to that date he has made the contents of the storage unit available to the Commission for inspection.

***Discovery Period***

With respect to the determination of the relevant period for discovery, I recommend that the Commission be allowed to conduct discovery from the date Stern was released from prison (March 31, 2005) to the present.

---

[5] This provision is intended to allow Stern to do that which he indicated at the mediation he would be forced to do, i.e., to obtain other employment and/or borrow money from friends. Stern may use this "new money" to pay his mortgage, utilities (including cable), loan payments, accountant, the IRS, and other personal expenses up to a maximum of $5,000 per month. He may also use such money to pay any past due obligations of OMR, but the total amount of such payments for both Stern personally and OMR shall not exceed $5,000 per month. Stern must be able to document the source and amount of the "new money" which is used to pay any expense for either himself or OMR.

**Conclusion**

For the reasons stated above, I recommend that the TRO be modified as stated above. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


<u>/s/ David L. Martin</u>
DAVID L. MARTIN
United States Magistrate Judge
November 8, 2010