UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

ONLINE-REGISTRIES, INC., and DAVID G. STERN,

Defendants,

and

MICHELE RITTER,

Relief Defendant.

Civil Action No. 10-433 S

**[SECOND PROPOSED] STIPULATED[1] PRELIMINARY INJUNCTION, ORDER FREEZING ASSETS, AND ORDER FOR OTHER EQUITABLE RELIEF**

Having considered the Joint Motion By Plaintiff Securities and Exchange Commission and David Stern for Entry of Preliminary Injunction, Order Freezing Assets, and Order for Other Equitable Relief, as well as all of the pleadings and other materials submitted by the parties, the oral arguments before the Court, the Report and Recommendation of United States Magistrate Judge David L. Martin, and this Court's December 8, 2010 Order, it is hereby ADJUDGED and ORDERED as follows:

1. A Preliminary Injunction, Order Freezing Assets, and Order for Other Equitable

1 The PRELIMINARY INJUNCTION is agreed to by Defendant David Stern and Plaintiff Securities and Exchange Commission. Defendant Online-Registries, Inc. has not yet appeared before the Court.

Relief (the "PRELIMINARY INJUNCTION"), the terms of which are set forth below, is immediately ENTERED against Defendant Stern;

2. The PRELIMINARY INJUNCTION shall ENTER against OMR on February 4, 2011, unless OMR, through counsel, requests a preliminary injunction hearing prior to that date;

3. The substantive terms of the PRELIMINARY INJUNCTION -- which do not materially vary from those set forth in the ***Temporary Restraining Order, Order Freezing Assets, and Order for Other Equitable Relief***, dated October 20, 2010 (the "Temporary Restraining Order"), as modified by the Court's ***December 8, 2010 Order*** and the parts of the ***November 8, 2010 Report and Recommendation of United States Magistrate Judge David L. Martin*** (the "R&R") adopted by the Court in its December 8, 2010 Order -- are repeated here as follows[2]:

(I) Stern and OMR and each of their agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including via facsimile or email transmission, or overnight delivery service, are restrained from violating Section 17(a) of the Securities Act of

---

2 Sections 4(I)-(IV) of this PRELIMINARY INJUNCTION are drawn from and correspond to Sections I-IV of the Temporary Restraining Order, dated October 20, 2010; Sections 4(V)-( VI) of this PRELIMINARY INJUNCTION are drawn from and correspond to Sections VIII-IX of the Temporary Restraining Order.

The language from Sections V-VII of the Temporary Restraining Order has not been included in the PRELIMINARY INJUNCTION because those sections pertain to actions that Stern and OMR were required to take within three to five days of entry of the Temporary Restraining Order. However, nothing herein shall serve to bar the Commission from enforcing or otherwise seeking relief as to Sections V-VII of the Temporary Restraining Order.

Sections 4(VII)-(VIII) of this PRELIMINARY INJUNCTION are drawn from the Court's December 8, 2010 Order modifying the Temporary Restraining Order.

Sections 4(IX)-(X) of the PRELIMINARY INJUNCTION are drawn from Paragraphs 1-4 of pages 10-11 of the November 8, 2010 Report and Recommendation by U.S. Magistrate Judge David L. Martin, with the following stipulated modifications: Section 4(X)(c) permits payment of certain ongoing expenses of OMR and clarifies that neither Stern nor OMR may repay any monies allegedly owed to Stern and/or Relief Defendant Michele Ritter during the pendency of the PRELIMINARY INJUNCTION.

1933 ("Securities Act") [15 U.S.C. §77q(a)] by, directly or indirectly, through the use of any means or instrumentalities of interstate commerce or the mails or of any facility of any national securities exchange,

(a) employing any device, scheme or artifice to defraud;

(b) obtaining any money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser, in the offer or sale of any securities.

(II) Stern and OMR and each of their agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including via facsimile or email transmission, or overnight delivery service, are restrained from violating Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5] by, directly or indirectly, through the use of the means or instrumentalities of interstate commerce or of the mails or of any facility of any national securities exchange,

(a) employing any device, scheme or artifice to defraud;

(b) making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) engaging in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

(III)(a)[3] Stern and OMR and each of their agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including via facsimile or email transmission, or overnight delivery service, shall hold and retain funds and other assets of defendants presently held by them, for their direct or indirect benefit, under their direct or indirect control or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located, and shall prevent any withdrawal, sale, payment (including, but not limited to, any charges on any credit card or draws on any other credit arrangement), transfer, dissipation, assignment, pledge, alienation, encumbrance, disposal, or diminution in value of any such funds or other assets, which are hereby frozen; and

3 Section 4(III) of the PRELIMINARY INJUNCTION is subject to and limited by Sections 4(IX)-(XI) of the PRELIMINARY INJUNCTION below.

(III)(b) All banks, brokerage and other financial institutions and other persons or entities which receive actual notice of this Order by personal service or otherwise, including via facsimile or email transmission, or overnight delivery service, holding any funds or other assets in the name, for the direct or indirect benefit, or under the direct or indirect control of defendants or over which defendants exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located, shall hold and retain within their control and prohibit the withdrawal, removal, sale, payment (including, but not limited to, any charges on any credit card or draws on any other credit arrangement), transfer, dissipation, assignment, pledge, alienation, encumbrance, diminution in value, or other disposal of any such funds or other assets; and that such funds and assets are hereby frozen.

(III)(c) The above Sections (III)(a) and (III)(b) shall immediately cease to apply to any asset, including any bank, brokerage or other financial institution account, which becomes subject to any later order entered by any federal court as a result of proceedings which may be filed by the United States or any department or agency thereof under any federal civil or criminal forfeiture statute, to the extent such later order requires the transfer of any asset to the United States.

(IV) All persons who hold or possess the direct or indirect proceeds of the misconduct described in the Complaint, in whatever form such funds or other assets may presently exist, who receive actual notice of this Order, by personal service or otherwise, including via facsimile or email transmission, or overnight delivery service, shall hold and retain such funds and assets and shall prevent any withdrawal, sale, payment (including, but not limited to, any charges on any credit card or draws on any other credit arrangement), transfer, dissipation, assignment, pledge, alienation, encumbrance, disposal, or diminution in value of any

such funds or other assets, which are hereby frozen.

(V) Stern and OMR and each of their agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including via facsimile or email transmission, or overnight delivery service, are hereby prohibited from soliciting, accepting, or depositing any monies obtained from actual or prospective investors, in OMR or otherwise, pending the resolution of this action.

(VI) Stern and OMR and each of their agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including via facsimile or email transmission, or overnight delivery service, are hereby restrained from destroying, mutilating, concealing, altering, disposing, or transferring custody of any items, including but not limited to any books, records, documents, correspondence, contracts, agreements, assignments, obligations, tape recordings, computer media or other property relating to defendants or the misconduct described in the Complaint.

(VII) Stern may not use his property as security for loans obtained while this case is pending.

(VIII) Stern's personal bank account at Newport Federal Savings Bank is not subject to the asset freeze so that he may access his monthly social security benefit, as discussed in the November 8, 2010 Report and Recommendation by U.S. Magistrate Judge David L. Martin.

(IX) The assets and income of Neptune Press and Golf-a-la Carte, which entities are owned by Stern, shall not be subject to the PRELIMINARY INJUNCTION.

(X) Other than access to his social security benefits in accordance with Section 4(IX) above, Stern may access and dispose of no more than $5,000 per month in money and, then, may do so only if the following conditions are satisfied:

(a) The money was received by Stern after November 5, 2010;

(b) The source of the money is employment compensation or loans from friends;

(c) The money is used by Stern solely to pay his mortgage bill, utilities (including cable), loan payments, accountant, the U.S. Internal Revenue Service, other personal expenses, OMR's past due obligations (*i.e.*, those incurred prior to November 5, 2010) to third parties (*i.e.*, not Stern or Relief Defendant Michele Ritter), and OMR's basic ongoing operating expenses, such as rent and utility expenses, paid to third parties (*i.e.*, not Stern or Relief Defendant Michele Ritter); and

(d) Stern retains a documented record of the source of the money that is used to pay for any of the expenses listed in subparagraph (c) above.

4. Nothing set forth herein shall serve to bar any of the Parties from moving the Court for modification of this PRELIMINARY INJUNCTION, if warranted by the circumstances; and

5. This PRELIMINARY INJUNCTION shall remain in full force and effect until further Order of the Court or entry of Final Judgment in this action.

IT IS SO ORDERED.

William E. Smith
United States District Judge
Date: ~~January~~ ______, 2011
February 24