```
                UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF RHODE ISLAND
```

SECURITIES AND EXCHANGE        :
COMMISSION,                    :
        Plaintiff,      :
                       :
        v.                 :      CA 10-433 M
                       :
ONLINE-REGISTRIES, INC.,       :
and DAVID G. STERN,            :
        Defendants,     :
                       :
    and                    :
                       :
MICHELE RITTER,                :
        Relief Defendant. :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

    Before the Court is Relief Defendant's Motion to Dismiss (Docket ("Dkt.") #55) ("Motion to Dismiss" or "Motion") filed by Michele Ritter ("Relief Defendant" or "Ritter"). The Motion has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for preliminary review, findings, and recommended disposition. The Court has determined that no hearing is necessary. After reviewing the filings, I recommend that the Motion be treated as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) and that it be denied.

## I. Treatment of Motion

    Ritter is representing herself in this matter. Therefore, the Court reads the Motion with solicitude. See Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991)(reading pro se prisoner's complaint

"with an extra degree of solicitude"); see also Raineri v. United States, 233 F.3d 96, 97 (1st Cir. 2000)("The federal courts historically have been solicitous of the rights of pro se litigants."). At the same time, "the right of self-representation is not 'a license not to comply with relevant rules of procedural and substantive law.'" Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994)(quoting Andrews v. Bechtel Power Corp., 780 F.2d 124, 140 (1st Cir. 1985)).

The Motion does not cite or identify any Federal Rule of Civil Procedure ("Fed. R. Civ. P.") as a basis for the requested dismissal. Thus, the Court must first determine which Rule is most likely applicable and then apply the appropriate standard. Based on Ritter's reliance on SEC v. Founding Partners Capital Management, 639 F.Supp.2d 1291 (M.D. Fla. 2009), where the court appears to have treated relief defendants' motion to dismiss as brought pursuant to either Fed. R. Civ. P. 12(b)(1) or 12(b)(6), this Court will assume that the instant Motion is brought pursuant to the same provisions.

## II. Standard

### A. Rule 12(b)(1)

When a defendant moves to dismiss for lack of subject matter jurisdiction, "the party invoking the jurisdiction of a federal court bears the burden of proving its existence." Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007)(quoting Murphy v.

2

United States, 45 F.3d 520, 522 (1st Cir. 1995)). In considering a Rule 12(b)(1) motion, the court must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor. Merlonghhi v. United States, 620 F.3d 50, 54 (1st Cir. 2010)(citing Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001)).

In determining a motion to dismiss pursuant to Rule 12(b)(1), a trial court may consider extrinsic materials without converting it into a motion for summary judgment. See Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000); see also Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002)("While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion.").

### B. Rule 12(b)(6)

The First Circuit has recently distilled the following principles regarding application of Rule 12(b)(6) from the decisions of the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009). See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011). Dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled

3

to relief." Ocasio-Hernández, 640 F.3d at 11 (quoting Fed. R. Civ. P. 8(a)(2)). A "short and plain" statement needs only enough detail to provide a defendant with "'fair notice of what the ... claim is and the grounds upon which it rests.'" Id. at 12 (quoting Twombly, 550 U.S. at 555)(alteration in original); see also Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement ....' Specific facts are not necessary.") (alteration in original). However, in order to "show" an entitlement to relief a complaint must contain enough factual material "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Ocasio-Hernández, 640 F.3d at 12 (citing Twombly, 550 U.S. at 555). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557)). In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim. Id.

In resolving a motion to dismiss, a court should employ a two-pronged approach. Ocasio-Hernández, 640 F.3d at 12. It should begin by identifying and disregarding statements in the complaint that merely offer "'legal conclusion[s] couched as ... fact[]'" or

4

"[t]hreadbare recitals of the elements of a cause of action." Id. (quoting Iqbal, 129 S.Ct. at 1949-50 (quoting Twombly, 550 U.S. at 555))(alterations in original). A plaintiff is not entitled to "proceed perforce" by virtue of allegations that merely parrot the elements of the cause of action. Id. (quoting Iqbal, 129 S.Ct. at 1950); cf. Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009)(disregarding as conclusory, under Iqbal's first prong, a factual allegation that merely "[p]arrot[ed] our standard for supervisory liability in the context of Section 1983" in alleging that defendants had "failed to [supervise] with deliberate indifference and/or reckless disregard of Plaintiff's federally protected rights")(alterations in original). Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible. Ocasio-Hernández, 640 F.3d at 12 (citing Iqbal, 129 S.Ct. at 1951 ("To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical .... It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.")(alteration in original)). But cf. Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011)("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.")(alteration in original)(internal quotation marks

5

omitted). If that factual content, so taken, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim has facial plausibility. Ocasio-Hernández, 640 F.3d at 12 (citing Iqbal, 129 S.Ct. at 1949). "The make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Id. (quoting Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)(Souter, J.)) (alteration in original).

Although evaluating the plausibility of a legal claim "requires the reviewing court to draw on its judicial experience and common sense," id. (quoting Iqbal, 129 S.Ct. at 1950), the court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable," id. (quoting Twombly, 550 U.S. at 556); see also Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations.") (alteration in original). Nor may a court attempt to forecast a plaintiff's likelihood of success on the merits; "a well-pleaded complaint may proceed even if ... a recovery is very remote and unlikely." Ocasio-Hernández, 640 F.3d at 12-13 (quoting Twombly, 550 U.S. at 556)(alteration in original)(internal quotation marks omitted); see also Twombly, 550 U.S. at 563 n.8 ("[W]hen a

complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.")(alteration in original). The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint. Ocasio–Hernández, 640 F.3d at 13.

### III. Facts[1]

Ritter lives in Newport, Rhode Island, in a home which she shares with Defendant David G. Stern ("Stern"). Complaint ¶ 11. Prior to the commencement of this action, Stern had been soliciting individuals since 2006 to invest in Online-Registries, Inc., d/b/a Online Medical Registries ("OMR"). Id. ¶¶ 1, 12. Stern told potential investors that OMR had developed a technology that would revolutionize the dissemination of medical information in emergencies and at other critical times. Id. ¶ 12. He also told potential investors that OMR had thousands of subscribers and that the technology had been successfully beta tested. Id. ¶¶ 13- 14. These representations were false. Id. ¶¶ 13, 14.

Stern also told some investors in 2008 and 2010 that the value of OMR and its stock would substantially increase when it

---

[1] For purposes of deciding the instant Motion, the Court credits Plaintiff's well-pled factual allegations and draws all reasonable inferences in Plaintiff's favor.

7

"partnered" with Google Health. Id. ¶ 15. While OMR signed an agreement with Google Health in April 2010 that permitted OMR to develop an interface with Google Health's databases, Stern's description of the significance of this contract to investors was misleading. Id. ¶ 16. Plaintiff's description of what actually occurred relative to this "partner[ing]" is recounted in the following paragraph.

OMR filled out a generic web-based application on Google Health's website to become a third party service provider to Google Health. Id. Google Health accepted OMR's application. The contract, in essence, permitted OMR to develop an application that could be purchased by existing users of Google Health. Id. The agreement was not negotiated, it did not provide for payments by Google Health to OMR or by OMR to Google Health, and it did not obligate Google Health to do anything or promote or advertise OMR's service. Id. Dozens of other companies also completed the same application and entered into the same relationship with Google. Id. Stern's statements to OMR investors that OMR's partnership with Google Health would immediately and significantly increase the value of the company were, therefore, misleading. Id.

In addition, Stern did not inform potential investors that he had been disbarred from practicing law and convicted of mail fraud and wire fraud. Id. ¶ 17. Stern had been disbarred from practicing law in Massachusetts in 1997 after he was found to have

8

breached his fiduciary duty as the trustee of a trust established by his clients. Id. ¶ 10. He had transferred more than $3.5 million in trust assets to a company in which he had an interest and had also used trust assets for his own personal benefit. Id. Stern was convicted of mail fraud and wire fraud in the District of Massachusetts in April of 2002. Id. His crimes involved soliciting client funds for investment and then using those funds for his personal benefit. Id. Stern served two years in prison, from January 2003 through March 2005, for these offenses. Id.

Since mid-2008, OMR has obtained approximately $170,000 from at least ten investors who purchased OMR shares. Id. ¶ 19. Investors paid for their shares using checks that were deposited to OMR's bank account which Stern controlled. Id. By the end of September 2010, virtually all of the proceeds of those investments had been withdrawn from OMR's bank account. Id. ¶ 20. Only approximately $274.00 remained. Id.

Of the approximately $170,000 that Stern obtained from investors, Stern appropriated $68,100 of that sum by writing checks payable to himself and another $29,500 by writing checks payable to Ritter. Id. ¶ 21. Of particular note, between June 1 and June 15, 2010, investors purchased at least $50,000 in shares of OMR. Id. ¶ 22. Within a few weeks, by mid-July, Stern had written seven checks, totaling $28,500, that were payable to himself. Id. Within the same time frame, he wrote six checks payable to Ritter

9

which totaled $12,500.  Id.  Thus, within the span of slightly more than one month, Stern transferred at least $41,000 of the $50,000 that was invested in OMR in June 2010 to himself and Ritter.  Id. ¶ 23.  Many additional point of sale withdrawals from the OMR bank account were made at restaurants and gas stations.  Id. ¶ 22.

**IV. Discussion**

Ritter contends that any funds she received from OMR were in the form of repayments of loans which she had made to OMR.  See Motion at 2.  Ritter cites a Declaration of Marc Walz, which she says Plaintiff attached to its Complaint, as allegedly providing support for her contention.  See id.  However, no declaration is attached to Plaintiff's Complaint, and the Court fails to find the referenced declaration in the record.[2]  Moreover, the support allegedly provided by the declaration is that Stern told Walz that the payments made to Ritter were repayments of loans which she had made to OMR.  See id.  This is clearly hearsay, and the Court declines to credit a self-serving statement by Stern as a basis for dismissing Ritter from the action.

Ritter further argues that Plaintiff has been provided with copies of OMR's corporate tax returns, balance sheets, and profit

---

[2] A Supplemental Declaration of Marc G. Waltz ("Waltz Supp. Decl.") was filed with Plaintiff's Opposition to Defendant Stern's Motion to Dissolve Temporary Restraining Order (Dkt. #4) ("Plaintiff's Opposition").  However, the Waltz Supp. Decl. does not contain the statement which Ritter cites, and the docket entries which precede the filing of Plaintiff's Opposition do not reflect the filing of a prior declaration from Waltz.

10

and loss statements for the period beginning January 1, 2005. Id. According to Ritter, "said documents set forth the amount of the loan balance owed ... Ritter as of January 1, 2005, January 1, 2006, January 1, 2007, January 1, 2008, January 1, 2009[,] and January 1, 2010." Id. Ritter represents that the total amount of the checks identified in the Complaint as payable to her does not exceed the amount of her loan balance. Id. Ritter further states that since the filing of the Complaint, Plaintiff has never alleged that the payments to her were other than repayment of her loans to OMR and that Plaintiff has never alleged wrongdoing by Ritter. Id. Based on these circumstances, Ritter argues that the Motion should be granted, and she cites SEC v. Founding Partners Capital Management, 639 F.Supp.2d 1291 (M.D. Fla. 2009) ("Founding Partners"), where the court granted a similar motion filed by the relief defendants, as support for her position. See Motion at 4.

The Court is not so persuaded for the following reasons. First, to the extent that the Motion is brought pursuant to Rule 12(b)(6), subject to a few exceptions not applicable here, the Court may not consider matters outside the pleadings, and the documents Ritter cites are not part of the pleadings. While matters outside the pleadings can be considered when deciding a Rule 12(b)(1) motion, Ritter has not provided copies of the documents on which she relies. Accordingly, they are not before the Court. Second, the personal relationship which exists between

11

Ritter and Stern is a significant fact which clearly distinguishes Ritter from the relief defendants in Founding Partners. Third, in Founding Partners it was undisputed that the relief defendants "received the loan proceeds pursuant to written loan agreements with the [defendants] ...." Founding Partners, 639 F.Supp.2d at 1294. Here, although Ritter claims that the loans were reflected on OMR's corporate tax returns, balance sheets, and profit and loss statements, there is no evidence that these alleged loans are supported by any written loan agreements.[3] Fourth, both the timing of the payments to Ritter (coming shortly after OMR received an infusion of more than $50,000 in investor funds) and their number (six) create a reasonable inference that the checks were not loan payments. Payments on loans that have been in existence for years are usually made at regular intervals (e.g., monthly, quarterly, annually) and are not clustered together within the span of a

---

[3] The Court has previously commented upon the lack of supporting documentation as a basis for distinguishing the instant case from Founding Partners:

> In [Founding Partners], the relief defendants were admittedly true third-party entities with longstanding written loan agreements with the accused corporation in question. [639 F.Supp.2d] at 1294. Here, Ritter is an officer of the corporation, housemate of defendant Stern, and the Commission is not aware of any written loan agreements or contracts of any kind to support Ritter's claim that the payments made to her by OMR were proper loan repayments and the proper use of investor funds.

Order Denying Three Motions (Dkt. #66) at 3 (quoting Plaintiff's Opposition to Relief Defendant Michele Ritter's Motion to Stay Discovery (Dkt. #62) at 2 n.1).

little more than a month. Even if the explanation for the timing of the checks is that OMR lacked the funds to make any payments on the loans before it received the $50,000 in the first of half of June 2010, this would not explain why six checks were needed to make the loan payments. Presumably, one or two checks would have sufficed. Fifth, the Court cannot ignore the fact that the Motion was filed at a time when Ritter was refusing to participate in discovery. See Plaintiff's Opposition to Relief Defendant Michele Ritter's Motion to Stay Discovery (Dkt. #62) at 2 ("The Commission has been unable to collect a single document from Ritter to date,[4] despite the fact that she was originally served with discovery requests on July 15, 2011. In addition, Ritter has refused to sit for her deposition on the agreed-upon date."). If the checks which Ritter received were, in fact, loan payments, the Court would expect that she would willingly provide Plaintiff with supporting information and documentation and not, as has been the case, tenaciously resist doing so.

In sum, I find based on the allegations of the Complaint that it can be reasonably inferred that Ritter received investor funds under circumstances dictating that, in equity and good conscience, she should not be allowed to retain. Dismissal is not warranted under the standard applicable to either Rule 12(b)(1) or Rule

---

[4] Plaintiff's Opposition to Relief Defendant Michele Ritter's Motion to Stay Discovery (Dkt. #62) was filed on October 20, 2011.

12(b)(6).

## V. Conclusion

For the reasons explained above, I recommend that Ritter's Motion to Dismiss be denied. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
December 5, 2011